

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Matthew J. Maddox
Assistant United States Attorney
Matthew.Maddox2@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

MAIN: 410-209-4800
FAX: 410-962-0716
FAX: 410-962-0716

February 29, 2016

Shari H. Silver, Esq.
Office of the Federal Public Defender
 for the District of Maryland
100 South Charles Street
Tower II, Ninth Floor
Baltimore, MD 21201

    Re:    United States v. Donta Betts, Criminal No. JFM-15-0557

Dear Ms. Silver:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **March 11, 2016**, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

    1.    The Defendant agrees to waive indictment and plead guilty to a Criminal Information charging him with:

    a.    **Making a Destructive Device**, in violation of Title 26, United States Code, Section 5861(f); and

    b.    **Discharge of a Firearm in Furtherance of a Drug Trafficking Crime**, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

    2.    The Defendant admits that he is, in fact, guilty of the foregoing offenses and will so advise the Court.

### Elements of the Offense

    3.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

**Making a Destructive Device**

a. The Defendant made a destructive device; and

b. The Defendant did so in violation of the National Firearms Act.

**Discharge of a Firearm in Furtherance of a Drug Trafficking Crime**

c. The Defendant committed the elements of a drug trafficking crime prosecutable in federal court;

d. The Defendant knowingly used, carried, or possessed a firearm;

e. The use or carrying of the firearm was during and in relation to, or the possession of the firearm was in furtherance of, the Defendant's drug trafficking crime; and

f. The firearm was discharged.

### Penalties

4. The maximum sentence provided by statute for the offenses to which the Defendant is pleading guilty is as follows:

a. **Making a Destructive Device:** ten years' imprisonment, a fine of $250,000, and a period of supervised release of three years.

b. **Discharge of a Firearm in Furtherance of a Drug Trafficking Crime:** life imprisonment, a fine of $250,000, and a period of supervised release of five years. Pursuant to 18 U.S.C. § 924(c)(1)(D)(ii), no term of imprisonment imposed on the Defendant for this offense shall run concurrently with any term of imprisonment imposed on the Defendant for any other offense.

5. In addition, the Defendant must pay $200.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.

6. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

7.  The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a.  If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c.  If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

   d.  The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

   e.  If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against his. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

   g.  If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

3

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

8. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

9. This Office and the Defendant understand, agree, and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

### Group One - Making a Destructive Device/ Obstruction of Law Enforcement during a Civil Disorder (Additional Offense Established by Statement of Facts)

a. Pursuant to U.S.S.G. § 2K2.1(a)(5), the base offense level for Making a Destructive Device is **18** because the offense involved a firearm described in 26 U.S.C. § 5845(a). The offense level is increased by **2**, pursuant to U.S.S.G. § 2K2.1(b)(3)(B), because the offense involved a destructive device. The offense level is increased by **4**, pursuant to U.S.S.G. § 2K2.1(b)(6)(b), because the Defendant used a firearm in connection with another felony offense (Obstruction of Law Enforcement Officers during a Civil Disorder). Accordingly, the offense level for Making a Destructive Device is **24**.

b. The stipulation of facts attached hereto specifically establishes the commission of the additional offense of Obstruction of Law Enforcement Officers during a Civil Disorder. The offense level for this offense is more than 9 levels less than **24** and thus is not calculated here.

### Group Two – Attempted Arson
### (Additional Offense Established by Statement of Facts)

c. The stipulation of facts attached hereto specifically establishes the

4

commission of the additional offense of Attempted Arson. Pursuant to U.S.S.G. § 2K1.4(a)(2), the base offense level is **20**.

### Discharge of a Firearm in Furtherance of a Drug Trafficking Crime

d. The guideline sentence for Discharge of a Firearm in Furtherance of a Drug Trafficking Crime is the mandatory minimum term of imprisonment of ten years. U.S.S.G. § 2K2.4(b).

### Group Three – Attempted Murder/ Distribution of a Controlled Substance
### (Additional Offenses Established by Statement of Facts)

e. The stipulation of facts attached hereto specifically establishes the commission of the additional offenses of Distribution of a Controlled Substance and Attempted Murder. Pursuant to U.S.S.G. § 2A2.1(a)(1), the base offense level guidelines for Attempted Murder is **33**. The offense level is increased by **3**, pursuant to U.S.S.G. § 2A2.1(b)(1)(B), because the victim sustained a degree of injury between permanent or life-threatening bodily injury and serious bodily injury. The offense level is increased by **2**, pursuant to U.S.S.G. § 3C1.1, because the Defendant willfully attempted to obstruct or impede the administration of justice with respect to the investigation, prosecution, or sentencing of the offense, and the obstructive conduct related to the offense and any relevant conduct. Accordingly, the final anticipated offense level for this offense is **38**.

f. The offense level for Distribution of a Controlled Substance is more than 9 levels less than **38** and thus is not calculated here.

### Multiple Count Rules

g. Because the offense level for Groups One and Two are 9 or more levels less serious than Group Three, there is no further adjustment to the offense level for Group Three. U.S.S.G. § 3D1.4.

h. This Office does not oppose a **2-level** reduction in the Defendant's offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1-level** decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

i. Accordingly, the final offense level is **35**.

10. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter the offense level for either offense if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

11. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range ~~and application of the 18 U.S.C. § 3553(a) factors~~, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines ~~or in 18 U.S.C. § 3553(a)~~ will be raised or are in dispute.

### Plea Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)

12. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of imprisonment **between 14 and 16 years** is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

### Obligations of the United States Attorney's Office

13. At the time of sentencing, this Office will move to dismiss the original Indictment against the Defendant.

14. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character, and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Charges Pending in Maryland State Court

15. The parties agree and understand that, upon the Defendant's entry of pleas of guilty pursuant to this agreement, the Defendant will enter the custody of the United States Marshals Service to await sentencing in this case, and the State's Attorney's Office for Baltimore City will dismiss the charges currently pending against the Defendant in the Circuit Court for Baltimore City.

### Restitution

16. The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. The Defendant reserves the right to address the appropriate final sum of restitution with the Court prior to the Court issuing a Restitution Order. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the

6

probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Collection of Financial Obligations

17. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Waiver of Appeal

18. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant waives any and all motions, defenses, probable cause determinations, objections which the Defendant could assert to the Criminal Information or the Indictment, or to the Court's entry of judgment against the Defendant and imposition of sentence upon the Defendant consistent with this agreement.

    b. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

    c. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except that the Defendant reserves the right to appeal any term of imprisonment that exceeds 16 years' imprisonment, and this Office reserves the right to appeal any term of imprisonment that is below 14 years' imprisonment.

    d. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from

appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

e. If the Defendant files a notice of appeal, notwithstanding this agreement, the Defendant agrees that this case shall be remanded to the district court to determine whether the Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

f. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

g. The Defendant may withdraw from the agreement if the Court wishes to impose a sentence in excess of 16 years' imprisonment, and the government may withdraw if the Court wishes to impose a sentence below 14 years' imprisonment. In the event that the Court rejects the plea, but neither side wishes to withdraw from the agreement, then nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision.

h. If the Defendant's guilty plea is rejected, withdrawn, vacated, or reversed by any court in a later proceeding, the government will be free to prosecute the Defendant for all charges as to which it has knowledge, and any charges that have been dismissed because of this plea agreement will be automatically reinstated. In such event, the Defendant waives any objections, motions, or defenses based upon the Speedy Trial Act or the Sixth Amendment to the Constitution as to the delay occasioned by the later proceedings.

## Obstruction or Other Violations of Law

19. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

8

# ATTACHMENT A: STATEMENT OF FACTS

*The undersigned parties stipulate and agree that the following facts are true and accurate, and if this matter had gone to trial, that the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Donta Betts ("Betts"), age 20, is a resident of Baltimore, Maryland. This case involves criminal conduct by Betts that occurred during two separate series of events: (1) crimes committed by Betts during the riots in Baltimore, Maryland on April 27, 2015, and (2) an unrelated attempted murder by shooting committed by Betts in Baltimore, Maryland on July 2, 2015, in connection with and furtherance of a prior illicit drug transaction. The two series of crimes are described separately below.

## 1. April 27, 2015

During the afternoon of April 27, 2015, riots and looting erupted in various parts of Baltimore, Maryland. The riots involved acts of violence by groups of three or more individuals that caused an immediate danger of, and resulted in, damages and injuries to the property and person of individuals not participating in the riots. Rioting occurred in the area of northwest Baltimore known as Penn-North in the vicinity of the intersection of Pennsylvania Avenue and West North Avenue, including the 1500 and 1600 blocks of West North Avenue. Many people participated in the riots by looting CVS Health Corporation store number 3976 ("CVS Pharmacy"), which was located in the Penn-North area at 2509 Pennsylvania Avenue. The looting and an arson committed during the rioting put CVS Pharmacy out of business. Rioting and looting also occurred in other areas of Baltimore, including the vicinity of Mondawmin Mall in northwest Baltimore, and affected other businesses.

At approximately 4:47 p.m. on April 27, 2015, a Baltimore Police Department ("BPD") police cruiser marked 12-9057 ("Vehicle 12-9057") was parked on the 1600 block of West North Avenue. At this time, Betts and other persons rioting in the area rocked and attempted to flip Vehicle 12-9057. At approximately 4:49 p.m., Betts attempted to destroy Vehicle 12-9057 by fire and explosion by removing its gas cap, placing a piece of flammable material into its fuel filler pipe, and igniting the material. Another individual acted to prevent the fire by removing the flammable material from the fuel filler pipe.

Between approximately 5:27 p.m. and 5:34 p.m., Betts participated in the looting of CVS Pharmacy by entering the store through its main front entrance and removing certain merchandise from the store.

By approximately 5:30 p.m., a line of BPD police officers had formed across the 2500 block of Pennsylvania Avenue, facing the intersection with West North Avenue and the main front entrance of CVS Pharmacy. By approximately 5:44 p.m., participants in the riot had placed an assemblage of metal propane cylinders and bag of charcoal briquettes on Pennsylvania Avenue near the main front entrance of CVS Pharmacy. The assemblage of propane cylinders and charcoal briquettes was placed between West North Avenue and the line of police officers that had formed across Pennsylvania Avenue.

1

## Court Not a Party

20. The Defendant expressly understands that the Court is not a party to this agreement. The Defendant understands that the Court is under no obligation to accept this plea agreement made pursuant to Rule 11(c)(1)(C). The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

21. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Matthew J. Maddox
Sandra Wilkinson
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Advisory Guidelines Stipulation and with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3\9\16
Date

_____
Donta Betts

I am Donta Betts's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

3\9\16
Date

_____
Shari H. Silver, Esq.

9

At approximately 5:46 p.m, anticipating the advance of the line of police officers to quell the looting of CVS Pharmacy, Betts sought to deter and obstruct the police officers through the production and use of an incendiary and explosive device. Betts ignited a roll of toilet paper, placed the burning object onto the assemblage of propane cylinders and charcoal briquettes, squirted lighter fluid onto the assemblage of incendiary materials, and thereby caused a substantial flame to burn on and among those materials. Betts then fled the area. At approximately 5:58 p.m., a large flame exploded from the incendiary device. The explosion resulted in flying debris from the propane cylinders, including large metal fragments, and blast effects felt by bystanders.

Following the riots, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") investigated numerous arsons committed in Baltimore and a number of incendiary and explosive devices made in the Penn-North area during the riots. In the course of this investigation, ATF collected video surveillance and photographs captured by media showing Betts near the front entrance of CVS Pharmacy wearing dark sweatpants, a dark hoodie, and black/white skate shoes. Betts is shown in the video and photograph images lighting fire to a roll of toilet paper, placing the burning toilet paper onto an assemblage of propane cylinders and charcoal briquettes, and squirting lighter fluid onto the burning group of incendiary materials. Betts's face and full body are shown in these images. Some of the images were published by local and national news media.

During the investigation, ATF learned that the scope of Betts's participation in the riots of April 27, 2015, was much broader. ATF obtained media photographs and video surveillance of Betts throwing objects at police officers in the vicinity of Mondawmin Mall and later looting and attempting to destroy vehicles in the Penn-North area. Video surveillance shows Betts in the Penn-North area attempting to tip over a Maryland Transit Administration transport vehicle while gesturing to encourage others to join him. Later, Betts is shown attempting to tip over Vehicle 12-9057 while, again, gesturing for others to join him. Betts is then shown igniting flammable material, placing it in the fuel filler pipe of Vehicle 12-9057, and then running away. Betts is also shown in video surveillance walking inside CVS Pharmacy during the looting and exiting the store with items of merchandise in hand.

Once apprehended, Betts admitted to being the individual in dark sweatpants, dark hoodie sweatshirt, and black/white shoes shown in media photographs and other still images burning the improvised incendiary device on Pennsylvania Avenue. Betts stated that it was his intent to prevent the police assembled across Pennsylvania Avenue from coming any closer while the looting and rioting was ongoing. Specifically, Betts stated that he intended to burn the incendiary materials so that the police "can't . . . come closer to us . . . so people could finish . . . stealing whatever they was going to steal." Betts also attempted to explain his actions by stating "I figured I did all this because that was my period of time to go wild on the police." Betts further admitted to stealing from CVS Pharmacy, a liquor store in Baltimore, and a shoe store at Mondawmin Mall during the riots of April 27, 2015.

Betts never made any registration or obtained any approval required by the National Firearms Act for the making of a firearm or destructive device. A search of the National Firearm Registration and Transfer Record showed no registrations by Betts.

Prior to the looting and arson of CVS Pharmacy on April 27, 2015, CVS Pharmacy was a

business operating as a retail store and pharmacy and part of one of the largest retail store and pharmacy chains throughout the United States. CVS Pharmacy was engaged in the movement of articles and commodities in commerce between Maryland and places outside of Maryland, and other activities affecting interstate commerce.

On April 27, 2015, and continuing to the present, BPD police cruisers were and continue to be used in various police activities that commonly affect interstate commerce, such as patrolling traffic on interstate and other roads, checking whether stopped persons or vehicles were wanted by federal or out-of-state authorities, and investigating or arresting individuals who lived or conducted business outside of Maryland. DB

**2. July 2, 2015**

On a date prior to July 2, 2015, Betts sold four pills or capsules MJM of heroin to the Victim at a location in Baltimore, Maryland. Betts expected to be paid $40 for the heroin but the Victim paid only approximately $20.

The next time Betts encountered the Victim was during the morning of July 2, 2015. Victim was in the driver's seat of a vehicle with a passenger in southwest Baltimore when Betts saw the Victim. Betts approached the vehicle with a firearm in hand and discharged the weapon in the Victim's direction, intending to kill her in retaliation for having been cheated in the prior drug transaction. The Victim was shot in the area of her left hip but managed to drive away from the area.

As a result of the shooting, the Victim sustained severe injuries to her left leg and was treated at the Shock Trauma Center at University of Maryland Hospital in Baltimore. The Victim and the passenger each provided a statement to Baltimore Police Department describing the attempt on the Victim's life and identifying Betts as the shooter. The Victim also described how she had shorted Betts in the prior drug transaction and text messages she had received from Betts after the transaction complaining about what she had done.

Betts was arrested for the shooting on July 7, 2015, charged with Attempted First Degree Murder and other offenses, and detained.

On July 18, 2015, during his detention, Betts placed a telephone call to a friend and stated during the call that he planned to use another person's identification to place a separate call to the friend the next day to discuss a matter. Betts planned to make the separate call using another person's identification in an attempt to avoid detection and monitoring by authorities.

On July 19, 2015, Betts made the promised call to his friend using another person's identification, and the call was recorded by the Maryland Department of Public Safety & Correctional Services. During the call, Betts provided the name of the shooting victim. Betts asked his friend to relay that information to certain associates of Betts and to instruct them to obtain a signed affidavit from the Victim stating that Betts did not shoot her. During the same call, Betts admitted to his friend that he did indeed shoot the Victim. ~~Later during the same call, Betts told his friend that, upon his release, he intended to kill another individual in retaliation for an alleged attempt on his life.~~

3

I have reviewed the foregoing Statement of Facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

_____  3/9/16
Donta Betts                    Date

I am Mr. Betts's attorney. I have carefully reviewed the statement of facts with him.

_____  3/9/16
Shari H. Silver, Esquire       Date
Counsel for Donta Betts

4